**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSE AGUILERA ROMERO, | : | Civil No. 1:26-CV-03012 |
| Petitioner, | : | |
| v. | : | |
| MARKWAYNE MULLIN, *et al.*, | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

# MEMORANDUM

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner Jose Aguilera Romero ("Petitioner"). (Doc. 1.) Petitioner argues that he is being unlawfully detained because Respondents did not have a valid warrant for his arrest. For the reasons that follow, the court will deny the petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Mexico. (Doc. 5-3, p. 2.)[1] He entered the United States on an unknown date at an unknown location. (*Id.*) On September 21, 2026, immigration officials encountered Petitioner while conducting a traffic stop targeting a different individual. (*Id.* at 3–4.) Petitioner was the passenger in the vehicle and was interviewed at the scene. (*Id.* at 4.) He admitted to being a citizen of Mexico and stated that he entered the United States

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

on a non-immigrant visa. (*Id.*) Petitioner provided a photo of his Mexican passport on his cell phone, but stated that his non-immigrant visa was at home. (*Id.*) He reportedly appeared nervous and avoided eye contact. (*Id.*) Petitioner stated that he did not live with the target of the traffic stop. (*Id.*)

An immigration officer confirmed Petitioner's immigration history and criminal checks. (*Id.*) It was determined that Petitioner entered the United States illegally and would need to be served with a notice to appear. (*Id.*) It was reported by an immigration officer that Petitioner has no community ties on the record, no address listed in law enforcement or immigration databases, and that Petitioner disregarded immigration law by entering the United States in the manner he did. (*Id.*) An immigration officer also reported that Petitioner was "deceptive when ask[ed] where he lives." (*Id.*)

Petitioner was then handcuffed and taken to the local immigration office for processing. (*Id.*) An arrest warrant was then issued for Petitioner. (*Id.*) The immigration record submitted by Respondents also provides: "[Petitioner] will be taken into ICE custody and an I-862 Notice to Appear will be filed with the appropriate immigration court." (*Id.* at 5.) From the records provided, it appears that a notice to appear charging Petitioner as removable pursuant to the Immigration and Nationality Act ("IRA") § 212(a)(6)(A)(i) was filed after the arrest warrant was issued on September 21, 2026. (*Id.*; Doc. 5-5.)

A notice of custody determination was issued on September 21, 2026. (Doc. 5-2.) Petitioner was initially detained at Moshannon Valley Processing Center and transferred to Pike County Correctional Facility on October 7, 2026. (Doc. 5-4, p. 6; Doc. 5-6.) Petitioner is scheduled for an immigration hearing. (Doc. 5, p. 3.)

On October 9, 2026, Petitioner filed a petition for writ of habeas corpus requesting release from detention against several parties, including Craig Lowe, Warden of Pike County Correctional Facility ("Respondents").[2] (Doc. 1.) Respondents filed a response on October 28, 2026, and Petitioner filed a traverse on November 2, 2026. (Doc. 6.) Thus, this petition is ripe for review.

**STANDARD OF REVIEW AND JURISDICTION**

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167

[2] Respondents submit that the only proper respondent is Craig Lowe because he is the Warden of Pike County Correctional Facility. (Doc. 5, pp. 4–5.) In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent. *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.") Because Petitioner has named a proper respondent, the court does not deem it necessary to determine whether the other named Respondents should be dismissed.

(2022)). Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted). Petitioner is detained at Pike County Correctional Facility, which is within the Middle District of Pennsylvania. *See* 28 U.S.C. § 118(b).

## DISCUSSION

Petitioner argues that he is being unlawfully detained because Respondents lacked a warrant for his arrest when he was arrested and no exigent circumstances excused Respondents from that requirement. (Doc. 1.) Petitioner alleges that Respondents violated the Immigration and Nationality Act and his substantive and procedural due process rights. (*Id.*) In support of his argument, Petitioner directs the court to multiple cases from the Eastern District of Pennsylvania. (*Id.* at 2; Doc. 6, p. 2.)

Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1226(a) and Petitioner can challenge his custody determination by requesting a bond hearing before an immigration judge. (Doc. 5, pp. 5–8.) They argue that the Department of Homeland Security ("DHS") has followed its regulations by providing a notice of custody determination, but Petitioner has not requested that an immigration judge review that detention decision. (*Id.* at 7.) Instead,

Respondents submit that Petitioner is trying to circumvent the process by filing a habeas petition. (*Id.* at 7–8.)

Additionally, Respondents argue that Petitioner must exhaust his administrative remedies before pursuing habeas relief. (*Id.* at 8–12.) They submit that § 1226(e) strips the court of the ability to review the custody determination of individuals detained under § 1226(a). (*Id.* at 8–9.) For these reasons, Respondents assert that Petitioner's due process claim fails as he received all the process that he is entitled to. (*Id.* at 12–15.) Notably, Respondents do not address Petitioner's arguments that they lacked a valid arrest warrant, thus, making his detention unlawful.

**A. This court has jurisdiction to resolve Petitioner's claims.**

Section 1226(e) bars the court from reviewing the discretionary judgment of an immigration judge and from setting aside a decision regarding detention or revocation or denial of bond or parole. But it does not bar the court from reviewing constitutional challenges through habeas review. *Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.") Here, Petitioner is asserting a constitutional challenge to his detention, not a

discretionary judgement by Respondents or an immigration judge. Thus, the court does not lack jurisdiction.

Respondents also assert that the petition must be dismissed because Petitioner failed to exhaust his administrative remedies before an immigration judge and the BIA. (Doc. 5, pp. 8–12.) Typically, a petitioner is required to exhaust his administrative remedies before filing a petition under Section 2241. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (citations omitted). But, there is no statutory requirement for exhaustion as "exhaustion exists only as a judicially created doctrine applied at the Court's discretion." *Kashranov v. Jamison*, 2:25-cv-5555, 2025 WL 3188399, at *4 (E.D. Pa. Nov. 14, 2025) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). And exhaustion "is likewise not required when it would be futile." *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-cv-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025) (citation omitted). Here, requiring Petitioner to exhaust his administrative remedies would be futile because he argues that Respondents subjected him to an improper arrest in violation of his constitutional rights. Thus, the court will not require Petitioner to exhaust his administrative remedies and will resolve his petition.

**B. Respondents lacked authority to issue a warrant for Petitioner's arrest.**

To begin removal proceedings against a noncitizen, a federal official must issue an administrative document called a notice to appear. 8 U.S.C. § 1229(a)(1);

*Vazquez Cruz v. Jamison*, No. 26-cv-7784, --- F. Supp. 3d ----, 2026 WL 3182469, at *1 (E.D. Pa. Oct. 23, 2026). This serves as the "charging document" in removal proceedings like an indictment initiates a criminal case or a complaint opens a civil case. *Id.* (citations omitted).

Section 1226(a) provides that "*on a warrant* issued by the Attorney General," a noncitizen may be arrested and detained "pending a decision whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). The implementing regulations permit Immigration and Customs Enforcement ("ICE") and DHS to issue an administrative warrant using Form I-200 Warrant of Arrest to arrest noncitizens. *See* 8 C.F.R. 236.1(b)(1). The Form I-200 warrant permits officials to arrest noncitizens "*[a]t the time of issuance of the notice to appear*, or any time thereafter and up to the time removal proceedings are completed." *Id.* (emphasis added).

When reading Section 1226(a) and its implementing regulations together, it follows that "DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues *at the same time or after* DHS issues a [notice to appear.]" *Lopez-Lopez v. Jamison*, No. 26-cv-7618, 2026 WL 3094744, at *3 (E.D. Pa. Oct. 16, 2026) (quoting *Vladimir G. v. Easterwood*, No. 26-cv-2971, 2026 WL 1786418, at *2 (D. Minn. June 22, 2026)) (emphasis added); *Vasquez Cruz*, 2026 WL 3182469 at *3. Following the Eastern District of Pennsylvania and district courts across the

country, the court finds this reasoning persuasive and adopts the same conclusion. *See Vasquez Cruz*, 2026 WL 3182469 at *3 (collecting cases). As aptly stated in *Vasquez Cruz*:

> This interpretation also honors the purpose of the relevant law and documents. Section 1226(a) authorizes the detention of noncitizens pending the outcome of their removal proceedings. [A notice to appear] initiates those removal proceedings. It therefore follows that without [a notice to appear], removal proceedings are not pending, and there is no basis to issue a warrant to detain a noncitizen pursuant to Section 1226(a).

*Id.* (citing *Loaeza v. Bausch*, No. 26-cv-00945, --- F. Supp ----, 2026 WL 2150155, at *1 (W.D.N.Y. July 27, 2026).

Here, ICE failed to follow the required steps in the proper order. Officers questioned Petitioner at the scene of the traffic stop, took him into custody, and an arrest warrant was then issued for Petitioner. The immigration record provides: "[Petitioner] will be taken into ICE custody and an I-862 Notice to Appear will be filed with the appropriate immigration court." (Doc. 5-3, p. 5.) Based on this record before the court, it is clear to the court that an arrest warrant was issued *before* the notice to appear was issued and filed with the immigration court. Therefore, Respondents, through ICE, subjected Petitioner to an unlawful arrest based on an invalid warrant.[3] *See Vasquez Cruz*, 2026 WL 3182469 at *3 (citing 8

[3] Because it is unnecessary based on the court's holding, the court declines to decide whether the circumstances leading to Petitioner's arrest were unlawful, i.e. he was a passenger in a vehicle and not ICE's target.

U.S.C. § 1226(a); *Aguilar Torres v. Hardin*, No. 24-cv-1480, 2026 WL 1353242, at *1 (M.D. Fla. May 15, 2026)).

**C. The warrantless arrest was, nonetheless, lawful.**

Because the court finds that Petitioner was arrested on an invalid warrant under § 1226(a), the court must determine whether Petitioner's warrantless arrest was lawful under 8 U.S.C. §1357(a)(2). Immigration officials are given limited authority to make warrantless arrests under § 1357. *See* 8 U.S.C. § 1357(a)(2); *Arizona v. United States*, 567 U.S. 387, 408 (2012). "An officer may arrest a noncitizen without a warrant if he has 'reason to believe' that the noncitizen is violating certain immigration laws or regulations and is 'likely to escape before a warrant can be obtained.'" *Vasquez Cruz*, 2026 WL 3182469 at *1 (quoting 8 U.S.C. § 1357(a)(2)). Courts interpret "reason to believe" as "probable cause." *Id.* (quoting *Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979)). A warrantless arrest cannot be based on removability alone. *Id.* at *4 (citing *Par v. Jamison*, No. CV 26-3504, 2026 WL 1603299, at *3 (E.D. Pa. June 4, 2026)). In conducting this analysis, the court must look at "what the arresting officer knew at the time he took the noncitizen into custody." *Id.* (citing *Tabora-Brizuela v. Mullin*, No. CV 26-7010, --- F. Supp. 3d ----, 2026 WL 2908095, at *2 (E.D. Pa. Sept. 28, 2026)).

"Likely to escape" is interpreted as "likely to evade detention by immigration officers" when considering the totality of circumstances. *Id.* (citing *Hussen v. Noem*, 822 F. Supp. 3d 944, 980, 988 (D. Minn. 2026) (collecting cases)). The court in *Vasquez Cruz* considered a non-exhaustive list of factors for officers to consider in determining whether a noncitizen is "likely to escape." *Id.* (citing *Castanon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 854 (N.D. Ill. 2025) (noting that the factors cited in *Castanon Nava* are "a sufficient summary of the factors that federal courts across the country have surveyed"). Those factors include whether the noncitizen:

> (1) was arrested near his home; (2) lacked a known criminal history at the time of his arrest; (3) answered questions posed to him by ICE without incident or evasion; (4) was working in the area; (5) had a stable residence with a spouse, fiancé, and children; (6) had children or other family with proper immigration status; (7) was linked to altered identity documents; (8) had past attempts to flee; and (9) lacked ties to the community, such as family, home, or a job."

*Id.* (quoting *Castanon Nava*, 806 F. Sup. 3d at 854).

Considering these factors, the court finds that the immigration officer had "reason to believe" that Petitioner was "likely to escape before a warrant could be obtained." *See* § 1357(a)(2). The officer could not determine whether the arrest occurred near Petitioner's home as Petitioner was "deceptive when ask[ed] where he lives." The officer was not able to learn whether Petitioner was working in the area, had a stable residence, had children or family with proper immigration status,

or whether he had ties to the community. The officer was able to determine that Petitioner lacked a criminal history, did not appear to have any altered identity documents, and had no known past attempts to flee. However, the officer believed that Petitioner was evasive when responding to questions, particularly about his home address.

Considering the totality of these circumstances, Respondents had authority to arrest Petitioner without a warrant under § 1357(a)(2) based on Petitioner's evasiveness and unknown residence and employment. Because Respondents had authority to arrest Petitioner, it was permissible to detain Petitioner pursuant to § 1226(a). Given this, if Petitioner requests a bond hearing before an immigration judge in compliance with the applicable regulations, Respondents shall promptly provide Petitioner with a hearing. Thus, the petition for writ of habeas corpus will be denied.

## CONCLUSION

For these reasons, the court will deny Petitioner's petition for writ of habeas corpus. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: November 23, 2026